# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# JASPER DIVISION

| | |
|---|---|
| **DWIGHT LEDLOW,** | ) |
| | ) |
|     **Plaintiff,** | ) |
| | ) |
| **v.** | )   **Case No.: 6:14-CV-816-VEH** |
| | ) |
| **CAROLYN COLVIN, ACTING** | ) |
| **COMMISSIONER, SOCIAL** | ) |
| **SECURITY ADMINISTRATION,** | ) |
| | ) |
|     **Defendant.** | ) |

## MEMORANDUM OPINION

**I.     INTRODUCTION**

Plaintiff Dwight Ledlow ("Ledlow") brings this action under 42 U.S.C. § 405(g), Section 205(g) of the Social Security Act. He seeks review of a final adverse decision of the Commissioner of the Social Security Administration ("Commissioner"), who denied his application for disability and disability insurance benefits ("DIB"). Ledlow timely pursued and exhausted his administrative remedies available before the Commissioner. The case is thus ripe for review under 42 U.S.C. § 405(g).[1] The court has carefully considered the record and, for the reasons which follow, finds that the decision of the Commissioner is due to be reversed and

---

[1] 42 U.S.C. § 1383(c)(3) renders the judicial review provisions of 42 U.S.C. § 405(g) fully applicable to claims for SSI.

remanded.

## II. FACTUAL AND PROCEDURAL HISTORY

Ledlow was 48 years old on the date of the ALJ's decision, October 22, 2012. (Tr. 9, 68, 179). He has a seventh-grade education and vocational training as a truck driver. (Tr. 68-69, 187-88). He has past relevant work as a logger, log truck driver, mining driller, mine supervisor, millwright, and conveyor belt mechanic. (Tr. 103-105, 188, 200-07). Ledlow alleged disability since October 2, 2010, because of right arm pain, right rotator cuff injuries, pain in his left knee, and arthritis throughout his body. (Tr. 179-85).

Ledlow protectively filed applications for a period of disability and DIB on November 2, 2010. (Tr. 119, 128-43). The Social Security Administration denied these applications on December 15, 2010. (Tr. 128-32). He timely requested and appeared at a hearing before an administrative law judge ("ALJ"). (138, 154). The hearing was held on April 9, 2012, and the ALJ issued a decision, dated October 22, 2012, denying Ledlow's application. (Tr. 12,29). The Appeals Council denied Ledlow's request for review on March 6, 2014. (Tr. 1-6).

Ledlow filed a complaint with this court on May 1, 2014, seeking review of the Commissioner's determination. (Doc. 1). The Commissioner answered on August 6, 2014. (Doc. 6). Ledlow filed a supporting brief on September 22, 2014. (Doc. 8). The

Commissioner responded with her own brief on October 20, 2014. (Doc. 10). Ledlow then filed a reply brief on November 3, 2014. (Doc. 11).

### III. STANDARD OF REVIEW

The court's review of the Commissioner's decision is narrowly circumscribed. The function of this court is to determine whether the decision of the Commissioner is supported by substantial evidence and whether proper legal standards were applied. *Richardson v. Perales*, 402 U.S. 389, 390 (1971); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). This court must "scrutinize the record as a whole to determine if the decision reached is reasonable and supported by substantial evidence." *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983). Substantial evidence is "such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Id.* It is "more than a scintilla, but less than a preponderance." *Id*.

This court must uphold factual findings that are supported by substantial evidence. However, it reviews the ALJ's legal conclusions *de novo* because no presumption of validity attaches to the ALJ's determination of the proper legal standards to be applied. *Davis v. Shalala*, 985 F.2d 528, 531 (11th Cir. 1993). If the court finds an error in the ALJ's application of the law, or if the ALJ fails to provide the court with sufficient reasoning for determining that the proper legal analysis has been conducted, it must reverse the ALJ's decision. *Cornelius v. Sullivan*, 936 F.2d

1143, 1145-46 (11th Cir. 1991).

**IV.   STATUTORY AND REGULATORY FRAMEWORK**

To qualify for disability benefits and establish his or her entitlement for a period of disability, a claimant must be disabled as defined by the Social Security Act and the Regulations promulgated thereunder. The Regulations define "disabled" as "the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve (12) months." 20 C.F.R. § 404.1505(a). To establish an entitlement to disability benefits, a claimant must provide evidence about a "physical or mental impairment" which "must result from anatomical, physiological, or psychological abnormalities which can be shown by medically acceptable clinical and laboratory diagnostic techniques." 20 C.F.R. § 404.1508.

The Regulations provide a five-step process for determining whether a claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(i-v). The Commissioner must determine in sequence:

(1)   whether the claimant is currently employed;

(2)   whether the claimant has a severe impairment;

(3)   whether the claimant's impairment meets or equals an impairment listed by the [Commissioner];

    (4)    whether the claimant can perform his or her past work; and

    (5)    whether the claimant is capable of performing any work in the national economy.

*Pope v. Shalala*, 998 F.2d 473, 477 (7th Cir. 1993) (citing to formerly applicable C.F.R. section), *overruled on other grounds by Johnson v. Apfel*, 189 F.3d 561, 562-63 (7th Cir. 1999); *accord McDaniel v. Bowen*, 800 F.2d 1026, 1030 (11th Cir. 1986). The sequential analysis goes as follows:

> Once the claimant has satisfied steps One and Two, she will automatically be found disabled if she suffers from a listed impairment. If the claimant does not have a listed impairment but cannot perform her work, the burden shifts to the [Commissioner] to show that the claimant can perform some other job.

*Pope*, 998 F.2d at 477; *accord Foote v. Chater*, 67 F.3d 1553, 1559 (11th Cir. 1995). The Commissioner must further show that such work exists in the national economy in significant numbers. *Id*.

## V.    ALJ FINDINGS

After consideration of the entire record, the ALJ made the following findings:

1. The claimant meets the insured status requirements of the Social Security Act through December 31, 2014.

2. The claimant has not engaged in substantial gainful activity since October 2, 2010, the alleged onset date of disability.

3. The claimant has the "severe" impairments of generalized arthritis; multilevel cervical disc disease with history of cervical fusion; arthritis of the left knee with history of medial and lateral meniscal

tears; large loose body and grade II and III chrondomalacia with arthroscopy with meniscectomy; history of partial thickness rotator cuff tear of the right shoulder and proximal biceps tendon rupture and impingement with sobacromial decompression, distal clavicle resection, and history of extensive debridement of labrum and biceps tendon anchor; morbid obesity; hypertension; and hearing loss.

4. The claimant does not have an impairment or combination of impairments that meets or equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1.

5. The claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can do no upper or lower extremity pushing/pulling actions. He can do no climbing or driving. He can only occasionally bend and stoop; and must have a temperature controlled environment.

6. The claimant is unable to perform any past relevant work.

7. The claimant was born on January 31, 1964, and is a younger individual.

8. The claimant has a limited education and is able to communicate in English.

9. Transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the claimant is "not disabled," whether or not the claimant has transferrable job skills.

10. Considering the claimant's age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that the claimant can perform.

11. The claimant has not been under a disability, as defined in the Social Security Act, from October 2, 2010, through the date of this decision .

(Tr. 15-29).

## VI.   ANALYSIS

The court may reverse a finding of the Commissioner only if it is not supported by substantial evidence. 42 U.S.C. § 405(g). "This does not relieve the court of its responsibility to scrutinize the record in its entirety to ascertain whether substantial evidence supports each essential administrative finding." *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982) (citing *Strickland v. Harris*, 615 F.2d 1103, 1106 (5th Cir. 1980)).[2] However, the court "abstains from reweighing the evidence or substituting its own judgment for that of the [Commissioner]." *Id.* (citation omitted).

Ledlow raises four arguments against the ALJ's decision. First, he contends that the ALJ did not properly apply the pain standard, by improperly discrediting his subjective reports of pain and other symptoms. Second, he argues that the ALJ failed to properly evaluate a treating physician's opinion. Third, he says that the ALJ did not properly consider the effect of his overall combination of impairments on his ability to work. Fourth and finally, Ledlow contends that the Appeals Council was incorrect to deny review of the ALJ's decision. The

### A.   The ALJ Failed To Provide Explicit, Adequate Reasons For Discrediting The Claimant's Testimony On His Pain

---

[2] *Strickland* is binding precedent in this Circuit. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc) (adopting as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981).

The Eleventh Circuit has laid out a two-step standard to apply when a claimant alleges disabling pain. The standard requires:

(1) evidence of an underlying medical condition, <u>and either</u>:

(2) objective medical evidence that confirms the severity of the alleged pain arising from that condition <u>or</u>

(3) that the objectively determined medical condition is of such a severity that it can be reasonably expected to give rise to the alleged pain.

*Holt v. Sullivan*, 921 F.2d 1221, 1223 (11th Cir. 1991) (emphasis added). The ALJ is obligated to consider <u>both</u> the claimant's testimony and medical evidence under this standard. *Foote*, 67 F.3d at 1561.

The ALJ may reject a plaintiff's complaints of pain if he finds them not credible. *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992) ("[a]fter considering a claimant's complaints of pain, the ALJ may reject them as not creditable, and that determination will be reviewed for substantial evidence"). However, if the ALJ discredits a claimant's testimony regarding the <u>severity</u> of his symptoms, that determination must be supported by substantial evidence. *Id.*; *see also Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001) (explaining that the Commissioner's factual findings must be supported by substantial evidence). Furthermore, the ALJ may not reject the claimant's statements as to the intensity and persistence "solely because the available objective medical evidence does not substantiate [claimant's] statements."

20 C.F.R. § 404.1529(c)(2); *see also* SSR 96-7p ("[T]he effect the symptoms have on [the claimant's] ability to work may not be disregarded solely because they are not substantiated by objective medical evidence.").[3] Instead, the ALJ is bound to consider other evidence, in addition to the objective medical evidence, because "symptoms sometimes suggest a greater severity of impairment than can be shown by objective medical evidence alone." 20 C.F.R. § 404.1529(c)(3).

This other evidence includes "any symptom-related functional limitations and restrictions which [the claimant], [the claimant's] treating or non-treating source, or other persons report, which can reasonably be accepted as consistent with the objective medical evidence and other evidence[.]" *Id.* Relevant factors that may show the effect of the claimant's symptoms on his or her functional abilities include: the claimant's daily activities; the location, duration, frequency and intensity of the claimant's pain; any precipitating and aggravating factors; the type, dosage, effectiveness, and side effects of medication taken to alleviate the pain; and other treatments or measures taken by the claimant, not including medication. *Id.* Using these other evidence factors, the ALJ must show substantial evidence supporting his attempt to discredit the claimant's pain testimony. *Id.*

---

[3] Although they lack the force of regulations, Social Security Rulings are "binding on all components of the Social Security Administration." 20 C.F.R. § 402.35(b)(1); *see also McCloud v. Barnhart*, 166 Fed. Appx. 410 (11th Cir. 2006), 2006 WL 177576 (citing SSR 96-6p as authoritative, for example).

In applying this standard to the present case, the ALJ ultimately found that Ledlow's medically determinable impairments could reasonably be expected to cause "some pain and limitations." (Tr. 22). However, the ALJ determined that "the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment." *Id.* The ALJ found that the medical evidence submitted by Ledlow supported only a residual functional capacity ("RFC") of light work with several restrictions. (Tr. 21-26).

The court agrees with Ledlow's argument that the ALJ's decision to discredit his testimony was not supported by substantial evidence. Specifically, the ALJ failed to provide "explicit and adequate reasons" for rejecting Ledlow's testimony as to the severity of his symptoms, as he is required to do. *See Foote*, 67 F.3d at 1559. In his decision, the ALJ summarizes Ledlow's testimony, but then, after reciting the standard language finding the claimant's statements not to be entirely credible, fails to provide specific reasons to discredit any of Ledlow's statements. (Tr. 22). Instead, without explaining why he considers them to be inconsistent with Ledlow's testimony, the ALJ merely summarizes various pieces of evidence:

- that Ledlow was able to work until he suffered a shoulder injury on October 2, 2010, despite already having the other impairments before that date;

- that he reported in September 2012 that he did not take his blood pressure medication regularly;

- that he had been able to work before the injury despite being morbidly obese; and

- that he was discharged from physical therapy by Dr. Powell (the doctor who operated on his shoulder injury) on February 23, 2011 without any specific work restrictions.

(Tr. 22-23). In this case, without explanation from the ALJ, the court is unable to surmise how any of this evidence <u>discredits Ledlow's statements</u> about the extent of his pain since the injury he suffered on October 2, 2010. The first and third pieces of evidence merely show that Ledlow's previous medical problems did not prevent him from working before the alleged onset date. The second shows only that his hypertension was not a disabling impairment. None of these relate to the effects of Ledlow's shoulder injury, which he has alleged to be the basis of his disability.

As to the fourth piece of evidence, the ALJ's analysis[4] is an extremely tenuous basis for discrediting Ledlow. The ALJ writes, "Dr. Powell did not report that the claimant was unable to perform at least a range of light work. He merely reported that he did not know if the claimant was able to return to coal mining, ordinarily considered

---

[4] In fairness to the ALJ, it is not clear from his decision whether he intended his discussion of this evidence to serve as a means of discrediting Ledlow's subjective reports. The court finds it possible that the ALJ might have been treating Dr. Powell's records as affirmative support for his RFC findings, not using this evidence as a reason to discredit Ledlow's tetimony. (*See* Tr. 22-23).

11

much heavier work. However, he indicated no specific work restrictions." (Tr. 23). The absence of a statement that Ledlow was unable to perform light work is not equivalent to an affirmative statement that he was so able. In fact, the progress note from Dr. Powell stated that Ledlow was being discharged from physical therapy because he was "unable to progress work conditioning" further "due to significant knee instability and pain" and that he "experienced moderate shoulder soreness and overall physical fatigue, requiring frequent rest breaks." (Tr. 399). It is difficult to see how this report is inconsistent with Ledlow's allegations of pain; if anything, it seems to confirm a significant level of shoulder symptoms.

Later in his opinion, in the midst of explaining why he assigned little weight to the opinions of the examining neurologist, Dr. Todorov, the ALJ does mention one particular supposed inconsistency between Ledlow's testimony and other medical evidence. The ALJ writes, "The claimant testified at the hearing that he had level 8 to 10/10 pain but reported to Bledsoe that he had 4/10 pain. Moreover he was able to work through his pain in all activities and able to perform at the light physical demand level." (Tr. 25). However, a close reading of Ledlow's testimony and Bledsoe's reports fails to show any actual contradiction. At the oral hearing, the ALJ asked Ledlow "If you had to put that pain on a number of one to 10, with 10 being the greatest, what is your level of pain, the greatest during the day?" (Tr. 81, emphasis added). Ledlow

answered, "At times it probably gets up to an eight, and then on certain days it goes over a 10." (*Id.*). Meanwhile, in the reports of Bledsoe referenced by the ALJ, Ledlow "reports a current 4/10 pain score but states it quickly reaches the upper limits when he performs physical activities." (Tr. 459).

These statements are easily reconciled: Ledlow's pain varies, becoming particularly worse when engaging in physical activity. On the specific day recorded by Bledsoe, Ledlow only had a constant pain level of four, but Ledlow never testified that his pain was <u>always</u> higher than that, only that "at times it probably <u>gets up to an eight</u>." (Tr. 81, 459). As to the fact that Ledlow was able to perform at the light physical activity during Bledsoe's testing, Bledsoe also wrote that Ledlow "gave good effort throughout FCE and worked through pain in all activities." (Tr. 459). This merely shows that during the evaluation (which, presumably, is not as long as an ordinary workday) Ledlow was able to work through his pain; it does not indicate that he had no pain or only a low level of pain. Therefore, Bledsoe's report does not provide substantial evidence for rejecting Ledlow's testimony.

The ALJ failed to mention any other evidence in his decision, and the court declines to speculate about what other evidence, if any, he considered. See *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005) ("This limited review precludes deciding the facts anew, making credibility determinations, or re-weighing the

13

evidence."); see also *Richardson v. Perales*, 402 U.S. 389 (1971) ("We therefore are presented with the not uncommon situation of conflicting medical evidence. The trier of fact has the duty to resolve that conflict."). Therefore, for the reasons discussed above, the ALJ's credibility determination is not supported by substantial evidence due to his failure to articulate an adequate reason to discredit Ledlow. This appeal is therefore due to be remanded. See *Williams v. Astrue*, No. 5:07-CV-1914-VEH, (Doc. 14 at 19) (N.D. Ala. Aug. 5, 2008) (holding that the ALJ's failure to adequately discredit the claimant was an independent reason for remanding); *Hollis v. Astrue*, No. 4:07-CV-2061-VEH, (Doc. 12 at 21) (N.D. Ala. Oct. 24, 2008) (similar holding).

**B.    There Are Additional Problems In The ALJ's Evaluation of Dr. Todorov's Findings**

Ledlow also argues that the ALJ improperly rejected the opinions of Dr. Alexandre Todorov, which supported a more restrictive RFC. Dr. Todorov, a neurologist, examined Ledlow twice (in November, 2011 and March, 2012) and completed a medical source statement and a pain questionnaire on April 5, 2012. (Tr. 360-61, 374-75). Dr. Todorov:

- limited Ledlow to a total of two hours per day standing, one hour per day walking, and six hours per day sitting;

- opined that he can lift and/or carry ten pounds constantly, twenty pounds frequently, and thirty pounds occasionally;

- stated that Ledlow experiences pain severe enough to be distracting

> from adequate performance of daily work activities;
>
> • stated that physical activities such as walking, standing, bending, stooping, and moving of extremities increase his pain to such a level as to cause distraction from or total abandonment of work tasks; and
>
> • opined that Ledlow's medical condition would cause him to be absent from work at least three times per month, on average.

(Tr. 376-78).

The Eleventh Circuit has held that a treating physician's medical opinion should be given significant weight, absent a finding of good cause to disregard it. *Lewis v. Callahan,* 125 F.3d 1436 (11th Cir. 1997) ("The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error"). The opinion of an examining physician is not entitled to <u>deference</u>, but is generally entitled to more weight than the opinion of a non-examining physician. *McSwain v. Bowen*, 814 F.2d 617, 619 (11th Cir. 1987) ("their opinions are not entitled to deference because as one-time examiners they were not treating physicians"); *Broughton v. Heckler*, 776 F.2d 960, 962 (11th Cir. 1985) (" the opinion of an examining physician is generally entitled to more weight than the opinion of a non-examining physician.") (internal quotation marks omitted). Ledlow admits that Dr. Todorov qualifies only as an examining physician in this case. (*See* Pl.'s Brief, Doc. 8 at 8, referring to Dr. Todorov as "the sole examining neurologist.").

The ALJ rejected Dr. Todorov's opinions of Ledlow's limitations on three grounds, stating that they were not based on adequate methodology, inconsistent with some of Todorov's other opinions, and inconsistent with findings of Dave Bledsoe, the previously-mentioned occupational therapist. (Tr. 23-25). Two of the ALJ's reasons for discrediting Dr. Todorov's opinion are clearly without merit. First, the ALJ wrote that he "seemed to accept the claimant's subjective symptom's without performing any objective testing himself." (Tr. 23). This is contradicted by Dr. Todorov's notes, which show that he performed physical testing of Ledlow's range of motion at each of the two examinations, and made observations of his physical condition (e.g. limping while walking and swelling in his knee). (Tr. 360-61, 374-75). Second, the ALJ stated that Dr. Todorov's opinions "are inconsistent with the medical source opinion (physical) Dr. Todorov completed in which he reported that the claimant was capable of working eight hours per day." (Tr. 25). In fact, Dr. Todorov made no such statement.[5]

The final reason the ALJ rejected Dr. Todorov's opinion is its alleged inconsistency with the findings of Dave Bledsoe, an occupational therapist who completed a functional capacity examination ("FCE") on September 17, 2012. (Tr. 23-

---

[5] In his brief, Ledlow suggests that the ALJ came to this belief from Dr. Todorov's statements that Ledlow can sit for six hours, stand for two hours, and walk for one hour per day. (Doc. 8 at 11). As Ledlow points out (*id.*), these opinions only dealt with restrictions on physical postures, and they do not imply a belief by Dr. Todorov that Ledlow could work for nine or eight hours a day.

24, 459-64). The ALJ pointed to Bledsoe's conclusions that Ledlow "would be unable to return to strenuous work" but "is at the light physical demand level." (Tr. 459). In his credibility determination, the ALJ also focused on Bledsoe's notes that Ledlow "gave good effort throughout FCE and worked through pain in all activities." (Tr. 25, 459). The ALJ considered Bledsoe's notations to be inconsistent with Dr. Todorov's opinions that Ledlow's pain distracted him from adequate performance of daily work and that physical activity would increase his pain to such a degree as to cause distractions from or total abandonment of his tasks. (Tr. 24-25).

Whether Bledsoe's notes alone constitute substantial evidence for the ALJ's decision to reject Dr. Todorov's opinions is a close question. Because the court has already found that the ALJ's decision is due to be reversed in light of a failure to properly apply this circuit's pain standard, the court declines to reach this issue.[6]

## VI.  CONCLUSION

Based upon the court's evaluation of the evidence in the record and the parties' submissions, the court finds that the decision of the Commissioner is not supported by substantial evidence, specifically due to the ALJ's failure to properly apply the pain standard. Accordingly, the decision of the Commissioner is **REVERSED** and the case

---

[6] The court also declines to reach the arguments raised by the plaintiff that the ALJ did not properly consider the effect of his overall combination of impairments on his ability to work and that the Appeals Council was incorrect to deny review.

**REMANDED**.

**DONE** and **ORDERED** this the 10th day of August, 2014.

_____
**VIRGINIA EMERSON HOPKINS**
United States District Judge